# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ADESHOLA ADEGOKE, : | |
|     Petitioner, : | |
| : | CIVIL ACTION |
|     v. : | |
| : | NO. 10-CV-2056 |
| KAREN FITZGERALD, ALEJANDRO : | |
| MAYORKAS, JANET NAPOLITANO, : | |
|     Respondents. : | |

May _2_, 2011                                                                                            Anita B. Brody, J.

## MEMORANDUM

Petitioner Adeshola Adegoke ("Adegoke") is a Nigerian citizen and a lawful permanent resident of the United States who has filed a Petition for De Novo Naturalization Determination (the "Petition") after his naturalization application was denied by the United States Citizenship & Immigration Services ("USCIS"). I have jurisdiction over this dispute pursuant to 8 U.S.C. § 1421(c) and 28 U.S.C. § 1331. Respondents Karen Fitzgerald, Alejandro Mayorkas, and Janet Napolitano (collectively, the "Government") and Adegoke have submitted a Joint Statement of Undisputed Facts, and have filed cross-motions for summary judgment asking me to determine whether Adegoke is entitled to naturalization as a matter of law. For the reasons that follow, I will **GRANT** the Government's Motion for Summary Judgment against the Petition, and I will **DENY** Adegoke's Motion for Summary Judgment in favor of the Petition.

1

I. Background

The facts in this case are not in dispute. Adegoke, born as Muftau Adeshola in Nigeria, entered the United States on a student visa in 1987. On December 14, 1989, Adegoke was arrested by U.S. Immigration & Naturalization Services ("INS"), and was charged with immigration fraud in violation of 8 U.S.C. § 1160(b)(7)(a)(i). On January 29, 1990, Adegoke plead guilty to improper entry by an alien in violation of 8 U.S.C. § 1325, a misdemeanor. On February 21, 1990, Adegoke was deported from the United States.

After being deported, Adegoke applied for a B-2 non-immigrant visa from the U.S. Embassy in Nigeria. In order to obtain this visa, Adegoke provided the Embassy with a false identity, knowing that he would be denied a visa if he disclosed his arrest and deportation. On September 4, 1991, over a year after his deportation, Adegoke re-entered the United States using this B-2 visa. Adegoke remained in the United States for several years, and on May 19, 1995, he married a U.S. citizen.

On October 16, 1995, Adegoke applied for lawful permanent resident ("LPR") status, commonly known as obtaining a "green card," based on his marriage. See 8 U.S.C. § 1255. Adegoke failed to include on his application his arrest, his deportation, or his misrepresentations as to his identity. On April 19, 1996, Adegoke was interviewed under oath by INS. During this interview, INS asked Adegoke whether he was ever arrested or deported from the United States. Aware that answering in the affirmative would affect his chances of obtaining LPR status, Adeshola denied ever having been arrested or deported. Adegoke also denied ever having misrepresented his identity in the process of obtaining a visa. On April 19, 1996, INS granted Adegoke LPR status.

On March 4, 1999, Adegoke applied to the INS for naturalization. On January 13, 2000, INS interviewed Adegoke in connection with his naturalization application. At this interview, Adegoke admitted his misrepresentations. Despite these misrepresentations, INS did not initiate rescission proceedings, and took no action to deport Adegoke. Rather, Adegoke voluntarily withdrew his naturalization application.

On March 8, 2007, Adegoke again applied for naturalization. On this application, Adegoke disclosed his prior misrepresentations. On April 7, 2009, Adegoke was interviewed under oath at the Philadelphia Field Office of USCIS in connection with this application. At his interview, Adegoke again admitted his prior misrepresentations. USCIS denied Adegoke's application for a single reason, stating: "you are not eligible for naturalization because you did not obtain your permanent resident status lawfully." At this time, USCIS did not make a finding that Adegoke made any misrepresentations after 1996, and did not make a finding that Adegoke was not a person of good moral character. Adegoke now petitions for a de novo naturalization determination pursuant to 8 U.S.C. § 1421(c).[1]

## II. LEGAL STANDARD

Summary judgment will be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). There is a

---

[1] Section 1421(c) permits "[a] person whose application for naturalization under this subchapter is denied . . . [to] seek review of such denial before the United States district court for the district in which such person resides . . . . Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application." 8 U.S.C. § 1421(c).

"genuine" issue of material fact if the evidence would permit a reasonable jury to find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The "mere existence of a scintilla of evidence" is insufficient. Id. at 252.

The moving party must make an initial showing that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The non-movant must then "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Fed. R. Civ. P. 56(e)(2). The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In determining whether the non-moving party has established each element of its case, the court must draw all reasonable inferences in the non-moving party's favor. Id. at 587.

**III. DISCUSSION**

The requirements for naturalization are set out in 8 U.S.C. § 1427. One such requirement is that the petitioner must have been "lawfully admitted for permanent residence . . . ." 8 U.S.C. § 1427. Adegoke has failed to satisfy this requirement.[2]

---

[2] The Government also argues that Adegoke is ineligible for naturalization because he lacks the requisite good moral character. Because Adegoke has failed to meet the standard of being "lawfully admitted for permanent residence," I need not reach this issue. It appears, however, that while the Government is not necessarily "limited to [considering] the applicant's conduct during the five years preceding the filing of the application," 8 U.S.C. § 1427(e), the Government is generally only supposed to look beyond the five year limitation period "if the conduct of an applicant during the statutory period does not reflect that there has been reform of character from an earlier period or if the earlier conduct and acts appear relevant to a determination of the applicant's present moral character." 8 C.F.R. § 316.10(a)(2); see also Nyari v. Napolitano, 562 F.3d 916 (8th Cir. 2009) (declining to consider conduct more than five years prior to petitioner's

4

As a general matter, "there must be strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship." Fedorenko v. United States, 449 U.S. 490, 522 (1981). This includes the requirement that the applicant have been lawfully admitted for permanent residence. 8 U.S.C. § 1427. The phrase lawfully admitted for permanent residence is defined at 8 U.S.C. § 1101(a)(2) as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." Id. In plain English, the phrase means a noncitizen who holds lawful permanent resident ("LPR") status. See Martinez v. Mukasey, 519 F.3d 532, 546 (5th Cir. 2008) (reading 8 U.S.C. § 1101(a)(2) as requiring "admission to the United States as a LPR and post-entry adjustment to LPR status.").

However, a noncitizen with LPR status "who is subsequently determined to have obtained that status through fraud . . . 'is deemed, ab initio, never to have obtained [LPR] status.'" Gallimore v. Att'y Gen., 619 F.3d 216, 223 (3d Cir. 2010) (quoting In re Koloamatangi, 23 I. & N. Dec. 548, 551 (B.I.A. 2003)). Having misrepresented his immigration history in order to obtain his LPR status, Adegoke's LPR status is void ab initio. Adegoke was thus never "lawfully admitted for permanent residence," and is ineligible for naturalization.

---

naturalization application, and citing to 8 C.F.R. § 316.10); Santamaria-Ames v. INS, 104 F.3d 1127, 1132 (9th Cir. 1996) (holding that an applicant cannot be found to lack good moral character solely owing to criminal conduct occurring more than five years prior to the application); Gatcliffe v. Reno, 23 F. Supp. 2d 581, 585 (D.V.I. 1998) (same). Based on the agreed-upon facts, it is unlikely that the Government would be permitted to show that Adegoke lacks good moral character by reference to his misrepresentations to the Government that occurred well over five years before the instant naturalization application.

Adegoke attempts to undercut this reasoning by pointing to 8 U.S.C. § 1256(a), which limits the Government's ability to rescind a noncitizen's LPR status more than five years after that status is obtained:

> If, at any time within five years after the status of a person has been otherwise adjusted . . . to that of an alien lawfully admitted for permanent residence, it shall appear to the satisfaction of the Attorney General that the person was not in fact eligible for such adjustment of status, the Attorney General shall rescind the action taken . . . .

8 U.S.C. § 1256(a). Adegoke argues that § 1256(a) extends beyond the rescission context and confirms that his LPR status is not void for purposes of naturalization. It does not.

Section 1256(a) was intended to ensure that noncitizens with LPR status were afforded "the security which ought to attend [LPR] status." Bamidele v. INS, 99 F.3d 557, 564 (3d Cir. 1996) (quoting Fulgencio v. INS, 573 F.2d 596, 598 (9th Cir. 1978)). A noncitizen living in perpetual fear of having his or her LPR status revoked would be denied that security. Similarly, given the "severity of the delayed onset of deportation proceedings," a noncitizen would be denied this security if he or she could be deported at any point in time. Bamidele v. INS, 99 F.3d 557, 564-65 (3d Cir. 1996). Here, however, the Government agrees that Adegoke's LPR status cannot be rescinded for his misrepresentations. The Government also concedes that Adegoke cannot be deported based upon his misrepresentations. Even if his citizenship application is denied, Adegoke will be able to retain his LPR status, and can reside in the United States without fear of rescission or deportation. Adegoke thus already enjoys the limited security that Section 1256(a) was intended to confer—Congressional intent does not require that Adegoke be naturalized as well.

In fact, granting Adegoke citizenship would actually detract from other Congressional concerns in the naturalization context. Specifically, Congress has made clear that naturalization should only be granted to applicants that have strictly complied with all of the statutory requirements for citizenship. See Fedorenko, 449 U.S. at 522 ("No alien has the slightest right to naturalization unless all statutory requirements are complied with." (quoting United States v. Ginsberg, 243 U.S. 472, 475 (1917))); see also 8 U.S.C. § 1429. By misrepresenting his identity, and by concealing his prior arrest and deportation, Adegoke has failed to comply with the statutory requirements for citizenship. As a result, Adegoke's prior misrepresentations render his LPR status void ab initio, and thus render him ineligible for naturalization.

## IV. Conclusion

Because Adegoke misrepresented his identify, and concealed his arrest and deportation when obtaining his visa, Adegoke's LPR status is void ab initio for purposes of naturalization Gallimore, 619 F.3d at 223. As a result, Adegoke was not "lawfully admitted for permanent residence" in compliance with 8 U.S.C. § 1427(a)(2), and is not eligible for citizenship. The Government's Motion for Summary Judgment is granted, and Adegoke's Cross-Motion for Summary Judgment is denied.

                                                         s/Anita B. Brody

                                                         _____

                                                         ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:          Copies **MAILED** on _____ to: